**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**DONALD ROBERTS,**

      **Plaintiff,**

**vs.**                                              **No. CIV 00-0321 LCS-ACE**

**LOCKHEED MARTIN CORPORATION,**

      **Defendant.**

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 29), filed September 25, 2000. The Court, acting upon consent and designation pursuant 28 U.S.C. § 636, and having considered the submissions of counsel, applicable law, and being otherwise fully advised, finds that this Motion is well-taken and should be **GRANTED** with respect to Plaintiff's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a). Plaintiff's supplemental claim for wrongful discharge should be dismissed without prejudice.

**I. Background**

Plaintiff was employed as a General Maintenance Worker at the Aerostat site located near Deming, New Mexico beginning in December 1993. (Am. Comp. ¶ 9.) Aerostat is a helium-filed, tethered blimp that is used to monitor the border area. (Am. Compl. ¶ 9.) Prior to 1996, Plaintiff's employer was Loral Training and Technical Services. (Undisputed Fact No. 2.) From 1996 until June 1, 1999, Defendant employed Plaintiff at the Aerostat site. (Undisputed Facts Nos. 1; 2.)

On August 8, 1997, Plaintiff injured his back while working for Defendant. (Def. Ex. D.) Plaintiff was treated by Dr. Tommy G. Lindsay, D.O. (Def. Ex. E.) An MRI revealed degenerative

changes at L5-S1 and a possible disc herniation at the same level. (Def. Ex. R.) Dr. Lindsay indicated that Plaintiff would be off work indefinitely and referred him to Dr. Bruce D. San Filippo, M.D., a neurosurgeon. (Def. Ex. E.)

Dr. San Filippo examined Plaintiff on September 4, 1997, noting that Plaintiff had undergone back surgery in 1973 and 1983 with good results. (Def. Ex. F.) An MRI indicated postoperative changes and abnormalities in the L5, S1 area. (*Id.*) Dr. San Filippo diagnosed back and right lower extremity pain, status post back surgeries, compatible with epidural fibrosis, rather than recurrent disc herniation. (*Id.*) Dr. San Filippo recommended that Plaintiff quit smoking, try mild anti-inflammatory medication, physical therapy, and a weight reduction program. (*Id.*) Dr. San Filippo stated that if Plaintiff had difficulty returning to work, he should consult an occupational physician. (*Id.*)

On April 22, 1998, Dr. Lindsay released Plaintiff to return to work without restriction on April 27, 1998. (Def. Ex. H.) Plaintiff testified that he "conned" Dr. Lindsay into issuing the release by taking him donuts and telling Dr. Lindsay that he was able to return to work. (Def. Ex. G.) Plaintiff testified that about three weeks after he returned to work, in May of 1998, he injured his back while lowering equipment. (Pl. Ex. E.)

On August 6, 1998, Dr. San Filippo examined Plaintiff. (Def. Ex. K) Plaintiff told Dr. San Filippo that after he returned to work in April, 1998, he continued to experience pain and had to stop working again on May 18, 1998. (*Id.*) Dr. San Filippo diagnosed epidural fibrosis and suggested a program of stretching exercises, physical therapy and consultation with an occupational physiatrist for a work hardening program. (*Id.*)

On December 29, 1998, Dr. Pamela Black, M.D., evaluated Plaintiff. (Def. Ex. K.) Dr. Black diagnosed probable right S1 radiculopathy and recommended selective nerve root blocks. (*Id.*) Dr.

Black opined that Plaintiff was able to return to work at the sedentary level with frequent position changes. (*Id.*) On January 5, 1999, Dr. Black performed an electrodiagnostic assessment. (*Id.*) The assessment was more consistent with old findings related to the injury of 1984. (*Id.*) Dr. Black concluded that Plaintiff was able to work at a light duty level. (*Id.*)

On February 16, 1999, Dr. Barry Diskant, M.D., performed an independent medical examination. (Def. Ex. R.) Dr. Diskant noted that Plaintiff had prior back surgeries in 1973, 1983, and 1984. (*Id.*) Plaintiff told Dr. Diskant that in May 1998, three weeks after he returned to work, he suffered another on-the-job injury, which increased his pain considerably. (*Id.*) Plaintiff told Dr. Diskant that he was doubtful he would be able to do the heavy parts of his job. (*Id.*) Dr. Diskant diagnosed chronic low back pain with right L5 radiculopathy and probable mechanical low back strain. (*Id.*) Dr. Diskant recommended that Plaintiff undergo a functional capacity assessment . (*Id.*)

Plaintiff's functional capacity assessment was performed by Novacare on May 20, 1999. (Def. Ex. S; Pl. Ex. P.) Plaintiff was cooperative throughout the testing and did not exaggerate his symptoms. (*Id.*) Plaintiff was able to frequently squat, crawl, climb stairs, kneel and balance, but only occasionally bend, stoop, and crouch. (*Id.*) Plaintiff was able to frequently lift and carry in the range of fifty-eight pounds. (*Id.*) Based on his review of Plaintiff's functional capacity assessment, Dr. Diskant opined that Plaintiff was capable of performing medium work. (*Id.*) Specifically, Dr. Diskant found that Plaintiff was able to lift up to fifty pounds occasionally, twenty pounds frequently; able to sit for six hours out of an eight hour shift, with a three to five minute break every hour; stand for three hours of an eight hour shift with a three to five minute break every half hour; and able to walk four to five hours out of an eight hour shift, so long as he was permitted a three to five minute break every half hour. (*Id.*)

On May 12, 1999, Dr. Lindsay again released Plaintiff to work without restriction. (Def. Ex. L; N.) In a letter dated May 16, 1999, Dr. Lindsay stated that he was concerned that Plaintiff would not be able to work at full capacity or might injure himself at work. (Def. Ex. P.)

Plaintiff's job duties required, *inter alia*, that he serve as a flight crew member during launches and recoveries of the Aerostat and that he demonstrate proficiencies in emergency procedures. (Def. Ex. C.) James P. Kelly testified that Defendant did not allow Plaintiff to return to his job because his impairments prevented him from performing emergency recovery operations. (Def. Ex. T.) Mr. Kelly testified that recovery procedures can take several hours and all employees on the site are required to participate. (Def. Ex. W.) Mr. Kelly further testified that Plaintiff did not request any accommodation for his condition. (*Id.*)

On June 1, 1999, Kim Nichter of Defendant's Human Resources Department wrote that Plaintiff's need to take three to five minute breaks after standing or walking for half an hour was incompatible with participation in the launch and recovery of Aerostat, as required of all employees at the Aerostat site. (*Id.*) The written job description for General Maintenance Worker includes a requirement that the worker serve as a flight crew member for launch and recovery of the Aerostat. (Pl. Ex. A.)

Plaintiff testified that he was able to do all the work at the Aerostat site as of May 1998 and thereafter. (Def. Ex. Q.) Plaintiff also testified that he never asked Defendant for any kind of accommodation. (*Id.*) Plaintiff testified that it was "possible" that an Aerostat site worker would be unable to take breaks during launch or recovery and that if the worker was unable to perform his job, he would pose a threat to co-workers. (Def. Ex. V.) Plaintiff's position was that he did not need any accommodation. (Pl. Ex. Q.)

On June 1, 1999, Defendant terminated Plaintiff. Subsequently, Plaintiff filed a charge of discrimination and received a right to sue letter. (Am. Compl. ¶ 6.)

In his First Amended Complaint, filed June 20, 2000, Plaintiff alleges employment discrimination on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and a supplemental claim for wrongful discharge.

**II. Standard**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F. 3d 1321, 1326 (10th Cir. 1999).

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F. 3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof.  *See Simms,* 165 F. 3d at 1326.  It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586.  An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion.  *See Bullington v. United Air Lines*, Inc., 186 F. 3d 1301, 1313 (10th Cir.1999).  The substantive law at issue determines which facts are material in a given case.  *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## III. Analysis

Plaintiff brings this action under the ADA. The ADA prohibits an employer from discriminating on the basis of an individual's disability. *See* 42 U.S.C. § 12112(a).  Defendant argues that it is entitled to summary judgment on the ADA claim because Plaintiff is not a qualified individual with a disability subject to the protection of the ADA and he did not request an accommodation. Defendant contends it is entitled to summary judgment on Plaintiff's supplemental claim because it did not violate public policy.

The ADA provides in pertinent part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard . . . [t]he terms, conditions and privileges of employment." 42 U.S.C. § 12112 (a).  In order to state a prima facie case under the ADA, Plaintiff has the burden of establishing that: (1) he is a disabled person as

defined by the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) Defendant discriminated against him because of his disability. *See Taylor v. Pepsi-Cola Co.*, 196 F. 3d 1106, 1109 (10th Cir. 1999). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate legitimate non-discriminatory reason for the discharge. *See Pastran v. K-Mart Corp.*, 210 F. 3d 1201, 1206 (10th Cir.2000). Assuming this burden is met, the burden shifts back to Plaintiff to establish that Defendant's proffered reason was pretextual. *See id.*

### a. Whether Plaintiff was disabled within the meaning of the ADA.

Defendant argues that Plaintiff is not a qualified individual with a disability within the meaning of the ADA. Disability is defined by the ADA as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; or (C) being regarded as having a physical or mental impairment that substantially limits one or more of the major life activities of such an individual. *See* 42 U.S.C. § 12102(2)(A-C). Plaintiff does not argue that he has a record of an impairment or that Defendant regarded him as disabled. Thus, the inquiry is whether Plaintiff has established a physical or mental impairment that substantially limits one or more of the major life activities under 42 U.S.C. § 12102(2)(A).

In order to establish a disability within the meaning of 42 U.S.C. § 12102(2)(A), Plaintiff must (1) identify an impairment recognized by the ADA; (2) state the relevant major life activity as that term is defined under the ADA; and (3) show that the impairment substantially limits the major life activity. *See Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F. 3d 1228, 1230 (10th Cir.1999) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). "[A] plaintiff must articulate with

precision the impairment alleged and the major life activity affected by that impairment." *Id*. at 1232. A general statement that the plaintiff has an impairment substantially impacting a major life activity will not suffice. *See id.* The determination of disability should be an individualized inquiry, with consideration of the positive and negative effects of mitigating measures. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 490 (1999).

Defendant asserts that Plaintiff is not disabled within the meaning of the ADA because his back problem does not substantially limit a major life activity. Plaintiff contends that his back condition substantially limited the major life activities of walking, standing and sitting. Major life activities include such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working. *See Poindexter*, 168 F. 3d at 1231-32. Therefore walking, standing and sitting qualify as major life activities.

The question then becomes whether Plaintiff's back problem substantially limits any of these major life activities. In order for a physical or mental impairment to be substantially limiting, the individual must be: (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. *See* 29 C.F.R. § 1630.2(j)(1); *Sutton*, 527 U.S. at 491

Plaintiff does not contend that he was unable to walk, stand or sit. Thus, the question is whether his ability to perform these activities was significantly restricted as to the condition, manner or duration under which he would perform them as compared to the condition, manner, or duration

under which the average person in the general population could perform them.  In determining whether Plaintiff was significantly restricted in any of these activities, the Court considers:  (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent long term impact, or the expected permanent or long term impact of or resulting from the impairment.  *See Pack v. K-Mart*, 166 F. 3d 1300, 1305 (10th Cir. 1999); *Doyal v. Oklahoma Heart, Inc.*, 213 F. 3d 492, 496 (10th Cir. 2000); 29 C.F.R. § 1630.2(j)(2).

Dr. Diskant opined that Plaintiff must take three to five minute breaks from standing and walking every half an hour and that Plaintiff must take a three to five minute break from sitting every hour.  (Pl. Ex. I.)  These requirements do not constitute significant restrictions on the ability to walk, stand and sit.  *See Taylor v. Pathmark Stores, Inc.*, 177 F. 3d 180, 186-87 (3d Cir. 1999) (plaintiff's "ability to stand or walk is not significantly less than that of an average person" just because he requires ten-minute hourly breaks and walks with a slight limp); *McCleary v. National Cold Storage*, 67 F. Supp. 2d 1288, 1301 (D. Kan 1999) (foot injury, leg brace and pain upon excessive standing or walking insufficient allow reasonable juror to conclude that plaintiff's capacity for walking or standing was significantly restricted).  The findings of all of Plaintiff's healthcare providers of record are consistent with the findings of Dr. Diskant.  Plaintiff has failed to establish that the requirement that he take three to five minute breaks  from walking and standing every half an hour and a three to five minute break from sitting every hour were sufficiently severe so as to be substantially limited within the meaning of the ADA.

Morever, well-established Tenth Circuit case law requires an ADA plaintiff to prove more than an inability to perform his former work.  An impairment affecting the ability to work does not substantially limit a major life activity unless the individual is precluded from a broad range of jobs.

*See Sorenson v. Univ. of Utah Hosp.*, 194 F. 3d 1084, 1088 (10th Cir. 1999) (holding that nurse, who had multiple sclerosis, was not disabled under subsection (C) because she alleged preclusion only from position as flight nurse); *Siemon v. AT&T Corp.*, 117 F. 3d 1173, 1175-76 (10th Cir. 1997) (holding that worker, who was unable to work within chain of command of certain supervisor due to severe depression and anxiety, was not disabled because he was not prevented from performing broad class of jobs); *Welsh v. City of Tulsa*, 977 F. 2d 1415, 1419 (10th Cir. 1992) (holding that impairment perceived by employer as limiting individual's ability to perform only one job is not a disability).

Plaintiff failed to submit any evidence that his back impairment impacted his ability to perform a class of jobs or a broad range of jobs in various classes. *See Bolton v. Scrivner, Inc.*, 36 F. 3d 939, 943 (10th Cir. 1994). Plaintiff's ability to stand and walk are only limited in that he must take three to five minute breaks from these activities every half an hour. Plaintiff ability to sit is only limited in that he must take a three to five minute break every hour. At the most, Plaintiff has shown only his disqualification from a single position or a narrow range of jobs. While Plaintiff was unable to perform the emergency recovery procedures required by his job a General Maintenance Worker at the Aerostat site, he has failed to establish that his ability to perform a broad range of jobs was substantially limited.

Viewing the evidence in the light most favorable to Plaintiff, I find that there is no issue of material fact as to whether Plaintiff's back impairment substantially limited a major life activity. Therefore, Plaintiff has not established a disability within the meaning of the ADA.

**b.     Whether Plaintiff has established he was qualified for the position.**

Plaintiff has also failed to demonstrate that he was qualified to perform the essential functions

10

of the position. The term "essential functions" is defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Whether a particular function is essential is a factual inquiry. *See* 29 C.F.R. Pt. 1630, App. 1630.2(n). The ADA provides that in making this inquiry, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). An essential function of a job includes the fundamental job duties of the position. *See Martin v. Kansas*, 190 F. 3d 1120, 1130 (10th Cir. 1999).

The job description for General Maintenance Worker includes a requirement that the worker serve as a flight crew member for launch and recovery of the Aerostat. (Pl. Ex. A.) Mr. Kelly testified that recovery procedures can take several hours and all employees on the site are required to participate. (Def. Ex. W.) Plaintiff himself testified that it was possible that an employee would be unable to take breaks during launch or recovery and that if he was unable to perform his job he would have posed a threat to co-workers. (Def. Ex. V.) Therefore, one of the essential functions of the position of General Maintenance Worker is the ability to work without interruption for several hours and the failure to do so could pose a threat to the safety of other workers.

The evidence establishes that Plaintiff's must take three to five minute breaks every half hour or hour. These limitations demonstrate that Plaintiff is not qualified to perform the essential functions of the job of General Maintenance Worker at the Aerostat site. Viewing the evidence in the light most favorable to Plaintiff, I find that there is no issue of material fact that Plaintiff was not qualified to perform the essential functions of the position. Therefore, Plaintiff has not established the second

element of his prima facie case under the ADA.

### c. Whether Plaintiff Requested an Accommodation.

An employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide an accommodation. *See Smith v. Midland Brake, Inc.*, 180 F. 3d 1154, 1171 (10th Cir. 1999). Plaintiff argues that he telephoned Ms. Nichter's office on numerous occasions to request an accommodation, but that she failed to respond. Plaintiff failed to support this assertion. Moreover, Plaintiff testified that he never asked anyone at Defendant for any form of accommodation. (Def. Ex. X.) Plaintiff denied ever having talked to Ms. Nichter about returning to work. (*Id.*) Ms. Nichter testified that she did not discuss accommodation or return to work with Plaintiff. (*Id.*) Viewing the evidence in the light most favorable to Plaintiff, I find that there is no issue of material fact that Plaintiff effectively failed to requested an accommodation for his back condition. Therefore, Defendant is entitled to summary judgment on Plaintiff's ADA claim.

### d. Plaintiff's claim for wrongful discharge.

Jurisdiction in this action was based solely on 28 U.S.C. § 1331 (federal question). The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim. *See* 28 U.S.C. § 1367(c)(3); *Gold v. Local 7 United Food and Commercial Workers Union,* 159 F. 3d 1307, 1301 (10th Cir. 1999). Therefore, Plaintiff's supplemental claim for wrongful discharge shall be dismissed without prejudice.

## IV. Conclusion.

Upon review of the evidence presented on this Motion for Summary Judgment, the Court has determined that summary judgment shall be granted in favor of Defendant and against Plaintiff with respect to Plaintiff's claims under the ADA. Plaintiff's claim under state law for wrongful discharge

shall be dismissed without prejudice. Accordingly, Defendant's Motion for Summary Judgment (Doc.29), filed September 25, 2000, shall be **GRANTED** with respect to the ADA claims and the supplemental claim shall be **DISMISSED WITHOUT PREJUDICE.**

**AN ORDER AND A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**